THOMAS G. WALLER; OSB # 945256
BAUER MOYNIHAN & JOHNSON LLP
2101 Fourth Avenue - 24TH Floor
Seattle, WA  98121-2320
Phone: (206) 443-3400
Fax: (206) 448-9076
Email: tgwaller@bmjlaw.com

Attorney for Marion County

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| In The Matter Of:<br><br>THE COMPLAINT OF MARION COUNTY, as owner and operator of the Ferry BUENA VISTA for Exoneration from or Limitation of Liability,<br><br>                    Petitioner. | IN ADMIRALTY<br><br>CASE NO.  6:25-cv-00782-MC<br><br>**PETITIONER MARION COUNTY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, 28 U.S.C. § 1333** |

## LR 7-1(A) CERTIFICATION

Undersigned counsel for Petitioner Marion County and counsel for Melodie Jackson o/b/o Jacob Jackson, and Alex Woolner, respectively, have conferred by telephone in a good faith effort to resolve the issues involved in the immediate *Motion*, but have been unable to reach agreement.  LR 7-1(a)(1)(A).  Petitioner Marion County accordingly presents the instant *Motion to Dismiss for Lack of Subject Matter Jurisdiction*.

## MOTION

### I        INTRODUCTION AND RELIEF REQUESTED

Petitioner Marion County, as owner and operator of the ferry BUENA VISTA,

PETITIONER'S MOTION TO DISMISS - 1
Case No.: 6:25-cv-00782-MC

respectfully requests this Court dismiss the pending action for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). Petitioner's *Complaint* (Dkt. 1) is premised on a state court lawsuit filed by plaintiff Melodie Jackson in the Oregon Circuit Court for Marion County (*Cause No. 25CV10925*). Ms. Jackson alleges in the Circuit Court action navigability and federal maritime law for a June 2024 fatal incident on the Willamette River. *See Complaint*, Dkt. 1, pp. 2-3. This incident occurred south and upstream from the Willamette Falls and Locks.

The Willamette River south and upstream from the Willamette Falls and Locks is not a commercial interstate waterway, is therefore not "NAVIGABLE" and, as such, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1333.

## II    FACTS AND PROCEDURAL HISTORY

### A.    THE PARTIES

#### 1.    Marion County and the Ferry BUENA VISTA

Petitioner Marion County is a local government body within the State of Oregon. *Declaration of Brian Nicholas*, ¶3. It is the sole owner and operator of the ferry BUENA VISTA. *See id*. at ¶6.

The BUENA VISTA is a cable-operated, electric motor ferry that traverses the Willamette River between Marion and Polk Counties at River Mile 106. *Id*. at ¶5.

#### 2.    Melodie Jackson o/b/o Jacob Jackson

Melodie Jackson is the personal representative for the estate of her son, Jacob Jackson (deceased), on behalf of whom she claims relief. *Claim by Melodie Jackson*, Dkt. 12, pp. 2-3.

### B.    THE INCIDENT AND CONSEQUENT PROCEEDINGS

This matter stems from a fatal kayaking incident on the Willamette River. On June 20, 2024, Messrs. Jacob Jackson and Alex Woolner were kayaking on the River near the BUENA VISTA ferry crossing. *See Complaint*, p. 2. As the BUENA VISTA was underway, Jackson's kayak (owned by Woolner) collided with the ferry, and Jackson perished at the scene. *See id.*; *see also Claim by Melodie Jackson*, Dkt. 12, pp. 2-3.

PETITIONER'S MOTION TO DISMISS - 2
Case No.: 6:25-cv-00782-MC

Melodie Jackson, as personal representative of decedent Jackson's estate, thereafter filed a civil lawsuit in Marion County Circuit Court against both Marion County and Alex Woolner for the June 2024 incident. *Marion County Circuit Court Cause No. 25CV10925.* Included in Ms. Jackson's allegations were assertions of navigability and that general maritime law applies to her state-court claims. *Complaint*, Dkt. 1, p. 3. The allegations of navigability and federal law have resulted in two separate actions for exoneration from or limitation of liability in this Court: first, by Petitioner Marion County; second, by Mr. Alex Woolner in *Cause No. 6:25−cv−01395−MC.*

Melodie Jackson has now appeared on behalf of decedent Jackson, refuting Marion County's Petition and asserting a claim under the perceived admiralty jurisdiction of this Court. *See Answer*, Dkt. 11; *Claim by Melodie Jackson*, Dkt. 12.

The Willamette River is not NAVIGABLE as Jackson asserts, and, as such, the Court lacks admiralty jurisdiction.

**C.    THE WILLAMETTE RIVER**

The Willamette River is a tributary of the Columbia River with its source near Eugene and its mouth at the Columbia River in Portland.

The Willamette Falls, near West Linn, and the closure of the Locks there over 10 years ago, created impassable barriers to all commercial and recreational watercraft travelling upstream and downstream on the Willamette River. *Nicholas Decl.*, ¶9 ("The closure of the locks at Willamette Falls created an impassable barrier preventing our Marion County ferries, and all other commercial vessels, from travelling downstream or upstream past the locks."); *Declaration of Counsel*, *Exhibits 1-3*, <u>infra</u>. *See e.g., Ex. 1, "Willamette Falls Locks Willamette River Oregon Section 216 Disposition Study with Integrated Environmental Assessment" (US Army Corps of Engineers, Portland District),* pp. 2-4/24:

> ***The authorized purpose of the [Willamette Falls Locks was] to provide navigation between the waterway upstream and downstream of Willamette Falls (Falls).*** . . . *[O]n December 5, 2011 the Corps, under its emergency operational authority, closed the Locks to vessel traffic due to life safety concerns*

*related to the potentially unsafe physical conditions [.] . . . The purpose under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347, of this Disposition Study is to deauthorize, modify as appropriate, and to dispose of the federal facility. **<u>The need for deauthorization and disposal is due to the absence of a federal interest in continued use of the facilities for their authorized purpose of navigation</u>** given the low to no commercial use of the facility since the late 1990s.*

### III    REQUEST FOR JUDICIAL NOTICE

In addition to the foregoing declarations and appended exhibits, Marion County respectfully requests the Court take judicial notice of the well-known and readily-determined fact that the Willamette Falls and adjacent Willamette Locks (now closed) are impassable barriers to commercial traffic operating on the Willamette River.  As cited in one of the studies below, the closure of the Locks in 2011 effectively "cut the Willamette River in two."

A court <u>may</u> take judicial notice, whether requested or not.  A court <u>shall</u> take judicial notice if required by a party and supplied with necessary information.  Judicial notice may be taken at any stage of a proceeding.  Fed.R.Evid. 201.  Such facts to be judicially noticed are "not subject to reasonable dispute because" they are (1) "generally known within the trial court's territorial jurisdiction[,]" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed.R.Evid. 201(b).

So is the case here.

In 2006, the Army Corps of Engineers placed the Willamette Falls Locks and Dam into "Caretaker" status due to the consistent decline in commerce moving through the Locks. *Counsel Decl., Ex. 1,* p. 3/24. [1]

Five years later, on December 5, 2011, the Corps closed the Locks to all marine traffic and transitioned the Locks from "Caretaker" to "non-operational" status due to seismic instability.  *Counsel Decl., Ex. 1,* pp. 3-5/24; 13/24; 17/24 ("Under each of [the Corps' disposition] alternatives . . . the facility shall remain closed to vessel traffic. . . .  Currently, the

---

[1] Publicly available for download: https://usace.contentdm.oclc.org/digital/collection/p16021coll7/id/8301

PETITIONER'S MOTION TO DISMISS - 4
Case No.: 6:25-cv-00782-MC

ATTORNEYS AT LAW
BAUER  MOYNIHAN  &  JOHNSON  LLP
2101 FOURTH AVENUE, STE. 2400
SEATTLE, WASHINGTON  98121-2320
TELEPHONE:  (206)  443-3400

facility is closed to vessel traffic and to the public and the Corps continues minimal maintenance activities[.]").

Closing the Willamette Falls Locks effectively "cut the Willamette River in two." *Counsel Decl., Ex. 2, "Economic Benefits of Reopening the Willamette Falls Locks,"* p. 11/43. [2] No longer can commercial and recreational vessels upriver of the Falls access Portland and the Columbia River. *Id.* "Likewise, downstream business and recreational users can no longer access sites upstream from the Falls on the [R]iver." *Id.*



Alex Woolner, who has kayaked on the Willamette River "hundreds of times" (*see id.*, *Ex. 5*, infra., p. 70, lns. 7-10), has also recognized the obstruction:

> **Q.    . . . Have you ever paddled your kayak past the Willamette Falls near Portland, Oregon City?**
> A.    The Oregon City?  No.
>
> **Q.    Have you ever heard of anybody being able to kayak beyond the Willamette Falls?**
> A.    That would be -- you're talking go over the falls?

---

[2]  The economic study was prepared for the Willamette Falls Locks State Task Force, established by Senate Bill 131, by the Willamette Falls Locks Working Group. *Counsel Decl., Ex. 4, "The Willamette Falls Canal & Locks,"* p. 3/18.  The latter organization is a coalition of local governments, nonprofits and businesses, including Clackamas County, the cities of Milwaukie, Oregon City, West Linn and Wilsonville, with the goal of repairing and reopening the locks. *Id. See* ORS 196.205, Establishment of Willamette Falls Locks Authority as independent public corporation. (" . . . (3) The mission of the authority is to establish ownership, oversight and management of the Willamette Falls Locks project . . .  and (b) Repairing, maintaining, upgrading and operating the Willamette Falls Locks project and associated properties and facilities for commercial, transportation, recreational, cultural, historic, heritage and tourism purposes.").

PETITIONER'S MOTION TO DISMISS - 5
Case No.: 6:25-cv-00782-MC

ATTORNEYS AT LAW
BAUER  MOYNIHAN  &  JOHNSON  LLP
2101 FOURTH AVENUE, STE. 2400
SEATTLE, WASHINGTON  98121-2320
TELEPHONE:  (206) 443-3400

> **Q.** **That's the only way to get past the locks, isn't it, that are closed?**
> **A.** Far as I know.
>
> **Q.** **You'd have to go over the locks -- or you'd have to go over the falls.**
> **A.** Be pretty stupid.  I think people have died doing that.

*Counsel Decl.*, *Ex. 5*, *Deposition of Alex Woolner*, p. 106, lns. 6-20.

The closure of the Willamette Falls Locks in 2011 and resultant termination of marine traffic traveling between waters above the Falls and below the Falls is not subject to reasonable dispute.  The fact is believed to be well known within the territorial jurisdiction of this Court and, equally, is a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" per Fed.R.Evid. 201(b).  *Counsel Decl., Ex. 3, NOAA Chart 18528.  (See NOTE D, <u>below</u>: "WILLAMETTE FALLS LOCKS.  The locks are currently closed and in a non-operational status.").*

Marion County asks the Court to take judicial notice of the fact the Willamette Falls and adjacent Willamette Locks (now closed) are impassable barriers to commercial traffic operating on the Willamette River.

## IV    POINTS AND AUTHORITIES

### A.    FEDERAL JURISDICTION AND RULE 12(B)(1) DISMISSAL

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994).  A court's subject matter jurisdiction may be challenged either facially or factually under Fed.R.Civ.P. 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  If the attack is factual, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment[,]" and "need not presume the truthfulness of the plaintiffs' allegations." *See id*. (citations omitted).

"The objection that a federal court lacks subject-matter jurisdiction, . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235 (2006) (referencing Fed.R.Civ.P. 12(b)(1)).  "[E]ven a joint stipulation cannot cure a jurisdictional

ATTORNEYS AT LAW
BAUER  MOYNIHAN  &  JOHNSON  LLP
2101 FOURTH AVENUE, STE. 2400
SEATTLE, WASHINGTON  98121-2320
TELEPHONE:  (206) 443-3400

defect." *See Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1217 (9th Cir. 2007) (citations omitted).

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3).

**B.    THE WILLAMETTE RIVER IS NOT *NAVIGABLE* — NO ADMIRALTY JURISDICTION — MARITIME LAW DOES NOT APPLY**



"A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.'" *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531, 115 S. Ct. 1043 (1995) (quoting U.S. Const., Art. III, § 2). That power is "embodied" in 28 U.S.C. § 1333(1), "giving federal district courts 'original jurisdiction . . . of . . . any civil case of admiralty or maritime jurisdiction . . . .'" *See id.* (quoting 28 U.S.C. § 1333(1)).

To invoke federal admiralty jurisdiction for a tort claim, "conditions both of location and of connection with maritime activity[]" must be satisfied. *See id.* at 534. This requirement has developed into a three-part test:

(1) "whether the tort occurred on **NAVIGABLE** water or whether injury suffered on

PETITIONER'S MOTION TO DISMISS - 7
Case No.: 6:25-cv-00782-MC

ATTORNEYS AT LAW
BAUER  MOYNIHAN  &  JOHNSON  LLP
2101 FOURTH AVENUE, STE. 2400
SEATTLE, WASHINGTON  98121-2320
TELEPHONE:  (206)  443-3400

land was caused by a vessel on navigable water[;]"

(2) whether, based on the "general features" of the incident, same has "a potentially disruptive impact on maritime commerce[;]" and,

(3) "whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id*. (cleaned up) (citations omitted) (emphasis and uppercase added).  All three elements are required.  *See id*; *Wallis ex rel. Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 840 (9th Cir. 2002); *Mission Bay Jet Sports, LLC v. Colombo (In re Mission Bay Jet Sports, LLC)*, 570 F.3d 1124, 1126 (9th Cir. 2009); *Millspaugh v. Port of Portland*, 65 Ore. App. 389, 392-93, 671 P.2d 743 (1983) (Oregon law applied when plaintiff could not satisfy locality test).

Here, the test fails upon the first hurdle: NAVIGABLE waters.

For admiralty jurisdiction to apply, the waters must be NAVIGABLE.  *Mission Bay*, 570 F.3d at 1126 ("the "location" prong focuses on "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.") (quoting *Grubart*, 513 U.S. at 534).

Inland waters (e.g., rivers) may be NAVIGABLE if the waters are NAVIGABLE "in fact."  *See Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870); *see also Ex parte Boyer*, 109 U.S. 629, 631-32, 3 S. Ct. 434 (1884); *In re Grants Pass Jetboats, Inc.*, 492 F. Supp. 3d 1123, 1128 (D. Or. 2020).  "Waterways are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways of commerce."  *Boone v. United States*, 944 F.2d 1489, 1495 (9th Cir. 1991) (quoting *United States v. Cress*, 243 U.S. 316, 323, 37 S. Ct. 380 (1917)) (internal quotes omitted).  In other words, to be "navigable," inland waters must support <u>interstate</u> commerce, or at least be <u>capable</u> of same.  *In re Garrett*, 981 F.3d 739, 741 (9th Cir. 2020) ("a continued highway over which <u>commerce is or may be carried on with other States or foreign countries</u> in the customary modes in which such commerce is conducted by water.") (quoting *Daniel Ball*, 77 U.S. (10 Wall.) at 563) (internal quotes omitted) (emphasis added).  "Neither non-commercial fishing nor pleasure boating nor

PETITIONER'S MOTION TO DISMISS - 8
Case No.: 6:25-cv-00782-MC

ATTORNEYS AT LAW
BAUER  MOYNIHAN  &  JOHNSON  LLP
2101 FOURTH AVENUE, STE. 2400
SEATTLE, WASHINGTON  98121-2320
TELEPHONE:  (206)  443-3400

water skiing constitutes commerce. Commerce for the purpose of admiralty jurisdiction means activities related to the business of shipping." *Adams v. Mont. Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975) (citing *George v. Beavark, Inc.*, 402 F.2d 977 (8th Cir. 1968)).

The inquiry does not end there.  The waters must be NAVIGABLE <u>at the site of the alleged injury</u>.  *Solano v. Beilby*, 761 F.2d 1369, 1371 (9th Cir. 1985) ("In examining the first part of the maritime tort test, courts have traditionally defined the locus of the tort as the place where the injury occurs.") (collecting cases); *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 383 (7th Cir. 2001) ("the fact that a river as a whole is navigable is not dispositive for purposes of maritime law.") (citations omitted).

Here, the waters to the south and upstream from the Willamette Falls and Locks are not NAVIGABLE.  The Court does not have 28 U.S.C. § 1333(1) jurisdiction.

"Navigability does not hinge on a particular manner or extent of use or on the absence of 'occasional difficulties in navigation,' but rather on whether 'the stream in its natural and ordinary condition affords a channel for useful commerce.'"  *In re Grants*, 492 F. Supp. 3d at 1128 (quoting *United States v. Holt State Bank*, 270 U.S. 49, 56, 46 S. Ct. 197 (1926)).

Waters may be "made navigable" for admiralty jurisdiction "even if not formerly so[.]" *PPL Mont., LLC v. Montana*, 565 U.S. 576, 592, 132 S. Ct. 1215 (2012) (citing, e.g., *Boyer*, 109 U.S. at 631-32).  But the inverse is also true.

A once NAVIGABLE waterway may become <u>not</u> NAVIGABLE if the conditions of same have "the practical effect of eliminating commercial maritime activity"—e.g., the construction of a dam.  *See Adams*, 528 F.2d at 440 (holding that if by damming a waterway, the potential for commercial maritime activity ceases to exist, then the waterway is not NAVIGABLE); *In re Garrett*, 981 F.3d at 741 (incident occurred on Holter Lake, which "is located on a stretch of the Missouri River located wholly within Montana" and "completely obstructed" by two dams at either end).

"*Present* navigability is the standard[.]"  *See Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779 (8th Cir. 1990) (emphasis in original) ("the Lake of the Ozarks

PETITIONER'S MOTION TO DISMISS - 9
Case No.: 6:25-cv-00782-MC

is not navigable in fact because of the existence of the Bagnell Dam. Neither the possibility of future navigation in the event the Army Corps of Engineers removes the dam nor the prior alleged navigability of the Osage River before the existence of the dam alters the present facts."); *see also Thompkins v. Lake Chelan Recreation*, 1995 U.S. Dist. LEXIS 17919, at *9 (E.D. Wash. Jan. 3, 1995) (citing *Adams*, 528 F.2d at 440).  The water "at the situs in issue" must "presently" be used or be capable of being used "as an interstate highway for commercial trade or travel. . . ."  *See LeBlanc v. Cleveland*, 198 F.3d 353, 359 (2d Cir. 1999); *Alford v. Appalachian Power Co.*, 951 F.2d 30, 32 (4th Cir. 1991) ("While it is not necessary that the waterway be in current use for such shipping, it must in its current configuration be so capable.").   If the waterway is not presently NAVIGABLE, there is no admiralty jurisdiction and maritime law does not apply:

> [I]f the damming of a waterway has the practical effect of eliminating commercial maritime activity, **no federal interest is served by the exercise of admiralty jurisdiction** over the events transpiring on that body of water, whether or not it was originally navigable. **No purpose is served by application of a uniform body of federal law**, on waters devoid of trade and commerce, to regulate the activities and resolve the disputes of pleasure boaters. *See George v. Beavark, Inc., supra* [402 F.2d 977, 979 (8th Cir. 1968)]. [4]  Only the burdening of federal courts and the frustrating of the purposes of state tort law would be thereby served.

*Adams*, 528 F.2d at 440-41 (emphasis added); *see also Ellington v. L.S.*, 2024 U.S. Dist. LEXIS 23020, at *9 (D. Ariz. Feb. 8, 2024) ("other courts have similarly found that just because a waterway was historically navigable does not mean it remains so after its configuration is changed.") (citing *Alford*, 951 F.2d at 33; *Three Buoys*, 921 F.2d at 779). [3]

So it is here.

This incident occurred south and upstream from the Willamette Falls and Locks.  The Willamette River is not presently NAVIGABLE south and upstream from the Willamette Falls and Locks.  Interstate maritime commerce is not merely impeded; it is effectively

---

[3] This standard for NAVIGABILITY is unique to the exercise of maritime law.  Other tests, such as those for establishing Congress' powers under the Commerce Clause, are irrelevant.  *See Adams*, 528 F.2d at 440; *LeBlanc*, 198 F.3d at 358; *Tundidor v. Miami-Dade Cty.*, 831 F.3d 1328, 1333 (11th Cir. 2016).

PETITIONER'S MOTION TO DISMISS - 10
Case No.: 6:25-cv-00782-MC

impossible.  The Locks supported commerce historically — but no longer.

There is no admiralty jurisdiction.  Federal maritime law does not apply.  The action must be dismissed for lack of subject matter jurisdiction.

**V       CONCLUSION**

Marion County respectfully requests its *Motion* be granted and the case dismissed.

DATED this Wednesday, October 22, 2025.

BAUER MOYNIHAN & JOHNSON LLP

Thomas G. Waller, OSB No. 945256
2101 Fourth Avenue, Suite 2400
Seattle, Washington 98121
Telephone: (206) 443-3400
tgwaller@bmjlaw.com
Attorney for Petitioner Marion County

PETITIONER'S MOTION TO DISMISS - 11
Case No.: 6:25-cv-00782-MC